JOHN J. MONOGHAN, Appellee, v. COLLIE C. BOWERS, Appellant.

**TRIAL:** Instructions—Province of Jury—Material Allegations— 1 Failure to Define Issues. Where the allegations of the petition contained, in addition to a material allegation of a false representation, numerous unnecessary allegations of false representations, an instruction submitting all of such matters to the jury was improper.

**APPEAL AND ERROR:** Review—Harmless Error—Right to Peremptory Instruction. 2 Where the trial court could have peremptorily instructed the jury that the plaintiff was entitled to recover, errors in the instructions in not defining the issues were without prejudice to the defendant.

FRAUD: Damages—False Representations as to Sale of Joint Prop-
3    erty. Where one owning property jointly with another was in-
     duced by the latter's false representations as to the price being
     received to join in a sale of the same, he was entitled to one
     half of the amount for which the property was sold.

*Appeal from Webster District Court.*—R. M. WRIGHT,
Judge.

MARCH 14, 1919.

ACTION for damages for false representations, whereby
the defendant obtained from the plaintiff a relinquishment
of plaintiff's interest in certain property owned jointly by
plaintiff and defendant. There was a verdict for the plain-
tiff, and the defendant appeals.—*Affirmed.*

*Healy & Faville,* for appellant.

*Price & Burnquist,* for appellee.

EVANS, J.—I. The plaintiff and defendant were sever-
ally engaged as real estate agents in Webster County. In
November, 1915, they became jointly interested as owners of
a certain property known in the record as the "Kepler prop-
erty," situated in Otho, and incumbered by a mortgage of
$1,000. In February, 1916, the plaintiff relinquished his
interest in the property, at the request of the defendant, for
a consideration of $250.

Under the evidence, the one material allegation of false
representation in the petition is that the defendant falsely
informed the plaintiff that he had sold the property to one
Apland for $1,500,—that is to say, for $500 over and above
the $1,000 incumbrance; whereas, in truth, the defendant
had contracted with Apland for a price of about $3,500, con-
sisting of $1,000 in cash, $1,000 in the assumption of the
mortgage, and $1,450 in two properties situated at Kalo, and
worth $850 and $600 respectively.

Upon discovery of the alleged fraud, the plaintiff repudiated his alleged relinquishment and his acceptance of $250 therefor, and claimed to recover from the defendant one half of the proceeds realized from the sale to Apland, less the sum of $250 already received by him.

Not content with the one material allegation of fraud which we have above set forth, the plaintiff set forth in his petition numerous other alleged false representations, being 12 or 15 in number, and serving no other function than to hamper the court in a concise submission of the case. These additional allegations were set forth by the trial court in its statement of issues as follows:

"And he further avers that, after he and said defendant became jointly interested in said property, the defendant, for the purpose of swindling and defrauding the plaintiff, falsely and fraudulently represented to the plaintiff that said property was worthless, that the people living in said community and in and about Otho were intensely clannish, bore a bitter hatred to the members of the Catholic church, of which plaintiff was a member; and he stated to this plaintiff that the best thing that he, the plaintiff, could do would be to sell said property for little or nothing, or said property would be destroyed, after it became known that plaintiff herein was a part owner of said property; and defendant further represented to the plaintiff that said property was not worth to exceed $1,500, and that the defendant knew that the said property was not of a greater value than $1,500; whereupon plaintiff herein informed the defendant that he would take the property at $1,500.00 and live there himself; and defendant then falsely and fraudulently stated that plaintiff would make a great mistake if he purchased said property and lived in said home, for the people would not tolerate plaintiff and his family in said community, because they were members of the Catholic church; and that the children in and about Otho and

Kalo were of a vicious, criminal kind; that it would not be safe for the children and daughters of the plaintiff to attend said school; that they would be assaulted and abused on their way to and from school; and plaintiff avers that all of said representations were false and well known to be false by the defendant, when he made them, and that the same were made to the plaintiff with the intention to defraud this plaintiff and made him part with the ownership of said property for a sum much less than it was worth; and plaintiff avers that he believed all of said representations of said defendant, and relied upon the truthfulness of the same, and upon the superior information of the defendant as to conditions in Otho."

Instruction 3, given by the court, was as follows:

"You are instructed that the burden of proof is on the plaintiff to establish, by a preponderance of the evidence, *all the material allegations* contained in his petition not admitted by the defendant in his answer: that is, he must establish the truth of each of the following propositions:

"First. That the defendant made to him *certain representations.*

"Second. That *said representations* were false.

"Third. That defendant, on making the said representations, knew them to be false.

"Fourth. That defendant intended that plaintiff should rely upon the truth of said representations.

"Fifth. That plaintiff did rely upon the truth of said representations.

"Sixth. That, by reason of the reliance upon the truth of said representations, the plaintiff made to defendant a transfer of his interest in said property.

"Seventh. That plaintiff has been damaged by reason of his reliance upon the truth of the representations as made by the defendant, and the amount of said damage.

"If plaintiff has established each of the foregoing

propositions by a preponderance of the evidence, he should recover in this case."

The appellant complains of this instruction in that it left the jury wholly in the dark as to which representations were material and which were not; that it advised the jury that the burden was on the plaintiff to prove

1. TRIAL: instructions: province of jury: material allegations: failure to define issues.

"certain representations;" and that no other guide was laid down. It must be conceded that the instruction is subject to criticism in this respect. While pleaders cast much unnecessary work upon the trial judge, by indiscriminate pleading, the duty still remains to the judge to enlighten the jury as to the very questions upon which it must pass. Trial judges should be fearless to separate the wheat from the chaff, and to commit themselves definitely and concretely to the material and controlling issues upon which the jury must pass, in order to render an intelligent verdict. The only wheat in plaintiff's pleading in this case is the allegation already indicated. The others were mere chaff, and should have been sifted out and blown over the tailboard by the instructions. By a later instruction "A," the controlling question was laid before the jury as follows:

"At the request of the plaintiff, I give you the following instruction, numbered A, to which you will give the same force and effect as if the same had been given to you on the court's own motion:

"A. The undisputed evidence shows in this case that the plaintiff and the defendant were the joint owners of the Kepler property, and in this connection you are told that if, in this case, you find that, before the plaintiff parted with his interest in the property in question, the defendant, unknown to the plaintiff, had already sold the property for a greater sum than the sum he represented to the plaintiff he had received for the property, and that the plaintiff was

damaged thereby, fraud would be presumed as a matter
of law."

Whether this latter instruction was sufficient of itself
to cure the shortcoming of the third instruction, we will
not stop now to inquire. An examination of the record
discloses the state of the evidence to be such
2. APPEAL AND ERROR: review: harmless error: right to peremptory instruction.
as to render the instruction complained of
quite nonprejudicial, and we turn thereto.
It is undisputed that the defendant did ob-
tain from the plaintiff a relinquishment of
his interest in the property on a basis of a valuation of $1,-
500; that the plaintiff believed that such was the price at
which the defendant had sold the property to Apland; that
the defendant disclosed to him nothing to the contrary;
and that the defendant had, in fact, sold the property to
Apland for a price greatly in excess of such sum. Plaintiff
testified that the defendant expressly stated to him that
$1,500 was the sum that he received. The defendant does
not admit this statement, but does admit that he did not
disclose the price that he had received. His only excuse
for his conduct is that he claims to have had an oral un-
derstanding, entered into some weeks before, that the plain-
tiff would take $250 for his interest. He does not claim
that he had any valid agreement to that effect. This state
of the evidence left nothing for the jury at this point. The
trial court could have peremptorily instructed the jury that
the plaintiff was entitled to recover to the extent of one
half the amount realized under the contract already entered
into with Apland. This would, of itself, dispose of every
question involved in Instructions 3 and A. It would leave
nothing for the consideration of the jury but the question of
the measure of recovery, to which we next give our at-
tention.

II. By Instruction 4, the trial court instructed the
jury that the measure of plaintiff's recovery would be one

half of the amount which the defendant obtained for the

property, estimating the Kalo property at

**3. FRAUD: damages: false representations as to sale of joint property.**
its reasonable value, as shown by the evidence, less the $250 already received by plaintiff. This was a correct instruction. The plaintiff had assented to the Apland sale. He was entitled to one half the proceeds thereof. In legal effect, his share had been converted by the defendant. The measure of his recovery, therefore, was the reasonable value of the property thus converted. No other errors are assigned by appellant. The judgment is, therefore,—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.